NUMBER 13-07-00096-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


WILLIAM GEROME KING, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 




On appeal from the 180th District Court of Harris County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Chief Justice Valdez


 

 Appellant William Gerome King was convicted by a jury for the offense of capital
murder and assessed a punishment of life imprisonment on July 1, 1994. The First Court
of Appeals affirmed appellant's conviction on November 22, 1995. King v. State, No.
01-94-00754-CR, 1995 WL 694738 (Tex. App.-Houston [1st Dist.] Nov. 22, 1995, pet.
ref'd) (not designated for publication). Subsequently, on November 21, 2006, the trial court
denied King's motion for post-conviction forensic DNA testing under chapter 64 of the code
of criminal procedure. See Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon Supp. 2007). 
By a single issue, King argues that the trial court erred when it denied his motion for
forensic DNA testing. We affirm.

I. Background (1)

 The victim in the underlying murder conviction, Jose Jesus Menchaca, often worked 

for Francisco Barrientez. Barrientez permitted Menchaca to live in Barrientez's tax office
because the office had been previously burglarized. Menchaca slept on a couch and kept
a gun under the sofa cushion for protection. 

 King often came by Barrientez's office and ran errands for Barrientez. Barrientez,
however, asked King not to come by the office at closing time with King's friends because
Barrientez often left the office with $40,000 to $50,000 in checks. Two weeks before
Menchaca's death, Barrientez became suspicious of King because Barrientez's office was
burglarized, and King offered to recover the items in exchange for $15. 

 On the night of Menchaca's death, King came by the office around 7:30 p.m. with
a friend, and Barrientez asked them to leave. King and his friend went to a convenience
store across the street and returned to the office around 9:00 p.m., only to have Barrientez
ask them to leave again. After being asked to leave, King and his friend returned to the
convenience store. When Barrientez left the office, Menchaca remained.

 The next morning, Barrientez drove by the building and noticed that the front door
was open. Barrientez found Menchaca sitting on the couch with what Barrientez initially
believed to be red paint all over Menchaca's face and the surrounding floor. Barrientez
also saw white paint splattered all over the room. After realizing Menchaca was dead,
Barrientez called the police.

 Law enforcement authorities contacted King the day after Menchaca's death. King
initially told law enforcement that he last saw Menchaca at 4:00 p.m. the day Menchaca
died. King gave law enforcement permission to search his home. At King's home, law
enforcement found a coat stained with white paint and a pair of shoes with soles that
matched a pattern left in the white paint at the tax office.

 In his police statement, King claimed he was alone at the convenience store across
from the tax office on the night Menchaca died. He briefly talked to Menchaca as they
passed in the store, and King saw Menchaca return to the tax office for the remainder of
the night. King said he saw someone "rush" Menchaca, push Menchaca inside the office,
and hit him on the head with a paint bucket when Menchaca opened the office door. King
claimed he went to the tax office and confronted the attacker. King also said that
Menchaca grabbed his gun when the attacker began looting the office. King claimed that
a struggle over the gun ensued between the attacker and Menchaca, during which the gun
discharged, killing Menchaca. King said the attacker left with the gun and other office
items.

 King later made another statement in which he admitted that he did not tell the
police the whole truth in his first statement. King claimed that on the night of Menchaca's
death, he was with his friend, Clifton Fuller. King said he saw Menchaca at the
convenience store, and then King and Fuller parted company. King then claimed he saw
Fuller "rush" Menchaca and push Menchaca inside the office. King alleged that he ran
over to pull Fuller off Menchaca. Menchaca then got his gun, and King claimed he grabbed
Menchaca's hand to stop him from using the gun, but that during the struggle, the gun
discharged, killing Menchaca.

 Another witness testified that on the night of Menchaca's death, King sold a gun for
crack cocaine. The gun sold was covered with white paint and later identified as the
murder weapon. At trial, the medical examiner testified the gun that shot Menchaca was
"at least" twenty-four inches away from his head. 

II. Discussion

 On June 20, 2006, King filed a motion for forensic testing of DNA evidence and a
affidavit in support of his motion. In his motion, King claimed that the police were in
custody of the clothing that he wore the night of the murder but never tested it for DNA. 
King argued that his clothing would contain blood splatter if he had shot Menchaca, and
that DNA testing would show the absence of blood splatter, thereby proving his innocence. 
The State responded to King's motion by arguing that he failed to meet the statutory
requirements for post-conviction DNA testing. Specifically, the State argued that he had
admitted to being at the scene with Fuller, the individual King claims "rushed" Menchaca,
and therefore, King failed to satisfy the identity requirement.

 The trial court denied King's motion for post-conviction forensic DNA testing on the
grounds that King (1) failed to demonstrate that identity was or is an issue in the instant
case; and (2) failed to demonstrate, by preponderance of the evidence, that he would not
have been convicted if exculpatory results had been obtained through DNA testing. See 
Tex. Code Crim. Proc. Ann. art 64.03(a)(1) (Vernon Supp. 2007). This appeal ensued. (2)

A. Standard of Review

 We review a trial court's decision to deny post-conviction forensic DNA testing using
the bifurcated Guzman standard. See, e.g., Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim.
App. 2002) (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Under
the Guzman standard, almost total deference is afforded to the trial court's determination
of historical fact issues and the application of law to facts that turn on credibility or
demeanor, but the reviewing court reviews de novo other applications of law to fact issues. 
Rivera, 89 S.W.3d at 59. The ultimate question of whether a defendant can demonstrate
by a preponderance of the evidence that exculpatory DNA tests would prove his innocence
is an application-of-law-to-fact question that does not turn on credibility and demeanor and
is therefore reviewed de novo. Id. 

B. Applicable Law

 Article 64.03(a), (b) of the Texas Code of Criminal Procedure sets forth the
requirements for when a convicting court may order forensic testing:

 (a) A convincing court may order forensic DNA testing under this chapter
only if:

 (1) the court finds that:

 (A) the evidence:

 (i) still exists and is in a condition making
DNA testing possible; and

 (ii) has been subjected to a chain of custody
sufficient to establish that it has not been
substituted, tampered with, replaced, or altered
in any material respect; and

 (B) identity was or is an issue in the case; and

 (2) the convicted person establishes by a preponderance of the
evidence that:

 (A) the person would not have been convicted if
exculpatory results had been obtained through DNA
testing; and

 (B) the request for the proposed DNA testing is not made
to unreasonably delay execution of sentence or
administration of justice.


(b) A convicted person who pleaded guilty or nolo contendere or, whether
before or after conviction, made a confession or similar admission in
the case may submit a motion under this chapter, and the convicting
court is prohibited from finding that identity was not an issue in the
case solely on the basis of that plea, confession, or admission, as
applicable.


Tex. Code Crim. Proc. Ann. art. 64.03 (a), (b) (Vernon Supp. 2007).

 A defendant who requests DNA testing can make identity an issue by showing that
exculpatory DNA tests would prove his innocence. See Blacklock v. State, 235 S.W.3d
231, 233 (Tex. Crim. App. 2007). Moreover, a court cannot make identity a non-issue
based solely upon a defendant's guilty plea, confession, or admission. See Tex. Code
Crim. Proc. Ann. art. 64.03(b); but see, Bell v. State, 90 S.W.3d 301, 308 (Tex. Crim.
App. 2002) (suggesting that a prior confession renders identity a non-issue in a Chapter
64 proceeding). 

 A defendant is not required to prove his "actual innocence" as a condition to
establishing his right to DNA testing, but rather, must only show by a preponderance of the
evidence that he would not have been convicted if exculpatory DNA test results had been
obtained. Blacklock, 75 S.W.3d at 233 (citing Kutzner v. State, 75 S.W.3d 427, 438-439
(Tex. Crim. App. 2002)). A defendant cannot satisfy this burden by showing that
exculpatory test results would "merely muddy the waters." Rivera, 89 S.W.3d at 59;
Kutzner, 75 S.W.3d at 438-39.

C. Denial of the Post-Conviction Forensic DNA Testing

 On appeal, King argues that the court erred when it found that (1) identity was a
non-issue in the instant case, and (2) he failed to demonstrate by a preponderance of the
evidence that exculpatory DNA evidence would prove his innocence. See Tex. Code Crim.
Proc. Ann. art. 64.03. 

 Even if we found that the trial court improperly made identity a non-issue, we
conclude that King has failed to demonstrate by a preponderance of the evidence that he
would not have been convicted if exculpatory DNA test results were obtained. King relies
on the medical examiner's statement that the gun was fired at a distance of "at least"
twenty-four inches to support his claim that the victim's blood and DNA would necessarily
have splattered onto his shirt at the time the gun was discharged. King fails to note that
the medical examiner only testified that the shot was fired from at least twenty-four inches. 
Therefore, the shot could have been fired from a much greater distance, such that the
blood would not have splattered onto King's clothing. King also failed to provide
explanations for (1) the sale of the firearm implicated in the murder for crack cocaine; (2)
the shoe pattern of his white paint-stained shoes that matched a pattern on the floor of the
murder scene; or (3) his different statements to law enforcement authorities. 

 Therefore, we find that the evidence that could be obtained from forensic DNA
testing of the shirt King wore at the time of the murder is not sufficient to demonstrate by
a preponderance of the evidence that King would not have been convicted if the DNA test
results had been obtained; rather, such evidence could only "mudd[y] the waters" at best. 
Rivera, 89 S.W.3d at 59; Kutzner v. State, 75 S.W.3d at 438-39; See Tex. Code Crim.
Proc. Ann. art. 64.03(a)(2). We hold that King failed to satisfy the requirements set forth
in article 64.03(a)(2) of the code of criminal procedure in order to obtain post-conviction
forensic DNA testing. Tex. Code Crim. Proc. Ann. art. 64.03(a)(2). Therefore, King's
issue is overruled.


III. Conclusion

 The judgment of the trial court is affirmed.


 

 ROGELIO VALDEZ,

 Chief Justice


Do not publish. Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 29th day of July, 2008.

1. Our understanding of the underlying conviction comes from the First Court of Appeals's opinion in
that case. See King v. State, No. 01-94-00754-CR, 1995 WL 694738 (Tex. App.-Houston [1st Dist.] Nov. 22,
1995, pet. ref'd) (not designated for publication).
2. This appeal was transferred to this Court from the First Court of Appeals by order of the Texas
Supreme Court. See Tex. Gov't Code Ann. § 22.220 (Vernon 2004) (delineating the jurisdiction of appellate
courts); Tex. Gov't Code Ann. § 73.001 (Vernon 2005) (granting the supreme court the authority to transfer
cases from one court of appeals to another at any time that there is "good cause" for the transfer).